1
2
3
4

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| ORIGINATE, INC., | Case No. 22-cv-07461-CRB |
|---|---|
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO DISMISS COUNTERCLAIM** |
| MAURO ARCHER & ONEILL LLP, A D.C. LIMITED LIABILITY PARTNERSHIP, et al., | |
| Defendants. | |

Plaintiff Originate, Inc. (Originate) brought suit in connection with Originate's contract with Defendant Fletcher Strategies (Fletcher) to develop a platform to manage California wildfire victims' tort claims.  See Compl. (dkt. 1-2).  Defendants[1] filed an answer and counterclaims for breach of contract and negligent misrepresentation.  See Counterclaim (dkt. 27).  Originate now moves to dismiss the negligent misrepresentation counterclaim.  See Mot. (dkt. 29).

The Court finds this matter suitable for resolution without oral argument, see Civil Local Rule 7-1(b), and GRANTS Originate's motion to dismiss the negligent misrepresentation counterclaim.

## I.  BACKGROUND

### A.  Background Facts

Defendant Mauro Archer is a law firm that sought to capture the wildfire litigation market.  Compl. ¶ 10.  Mauro Archer created Fletcher to manage its wildfire tort marketing

---

[1] Defendants are Mauro Archer & O'Neill LLP, Fletcher, and Does 1–20.  See Compl.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   and onboarding business. Id. ¶ 11. Through Fletcher, Mauro Archer sought to develop a

2   self-service "mobile experience." Id. ¶ 16. This would allow wildfire victims to seek help,

3   enter their information for Mauro Archer to set up the claim, and track the claim through

4   litigation. Id. This mobile experience would eliminate the overhead cost of numerous

5   client-facing claims managers performing intake. Id.

6       Originate works with clients to build digital product strategies and roadmaps. Id. ¶

7   14. Around August 2020, Fletcher asked Originate to assist Fletcher with two things: first,

8   to develop a platform to manage the claims that Mauro Archer expected to receive, and

9   second, to improve the user experience. Id. On September 8, 2020, Originate submitted a

10  Proposal to the defendants with a description of Originate's general approach and an

11  estimated timeline and estimated cost for the Originate's services. Counterclaim ¶¶ 13–14.

12  The Proposal also noted Originate's "primary areas of expertise" in business strategy, user

13  experience and design, and software development. Id. ¶ 13.

14      On September 15, 2020, Fletcher and Originate entered into a general Consulting

15  Agreement ("Agreement"). Id. ¶ 15. The Agreement stated that the parties would work

16  together and agree upon Statements of Work ("SOWs") "that would define Originate's

17  obligations and a time period for completing them." Id.

18      Fletcher and Originate entered into a series of SOWs over the course of the next

19  year, covering different phases of the project. See id. ¶¶ 16–21. Eventually, Fletcher

20  concluded that Originate had failed to meet its contractual obligations. See id. ¶¶ 22–28.

21  Fletcher asserts that Originate failed to provide either a working website or application. Id.

22  ¶ 28. Fletcher alleges that it "paid Originate over $3,000,000 to develop the application

23  and has little to show for it." Id.

24      **B.**    **Procedural History**

25      Originate brought suit in September 2022, claiming that Defendants did not pay

26  Originate's outstanding invoices and, to avoid payments, fabricated claims that Originate

27  failed to create the product as agreed. Compl. at 2. The complaint included claims for: (1)

28  breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3)

1    quantum meruit; (4) promissory estoppel; and (5) negligent misrepresentation.  See

2    generally Compl.  On February 16, 2023, Defendants filed an answer and counterclaims

3    for breach of contract and for negligent misrepresentation.  See Answer.  Originate now

4    moves to dismiss only the counterclaim for negligent misrepresentation.  See Mot.

5    **II.    LEGAL STANDARD**

6        Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim for relief may be

7    dismissed for failure to state a claim upon which relief may be granted.  Dismissal may be

8    based on either "the lack of a cognizable legal theory or the absence of sufficient facts

9    alleged under a cognizable legal theory."  Godecke v. Kinetic Concepts, Inc., 937 F.3d

10    1201, 1208 (9th Cir. 2019).  A pleading must allege "enough facts to state a claim to relief

11    that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009) (citing Bell

12    Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is plausible "when [a

13    party] pleads factual content that allows the court to draw the reasonable inference that the

14    [adverse party] is liable for the misconduct alleged."  Id.  When evaluating a motion to

15    dismiss, the Court "must presume all factual allegations of the [claim for relief] to be true

16    and draw all reasonable inferences in favor of the nonmoving party."  Usher v. City of Los

17    Angeles, 828 F.2d 556, 561 (9th Cir. 1987).

18        Claims sounding in fraud or alleging circumstances constituting fraud must be pled

19    with "heightened particularity."  See Fed. R. Civ. P. 9(b).  The heightened standard

20    requires a plaintiff to set forth the "who, what, when, where and how" of the claim.

21    Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997).  While there is no binding authority

22    in the Ninth Circuit as to whether the particularity requirements of Rule 9(b) apply to

23    negligent misrepresentation claims, this Court recently applied the particularity

24    requirements of Rule 9(b) to negligent misrepresentation claims.  See Chevron Prods. Co.

25    v. Advanced Corrosion Techs. & Training, LLC, No. 20-CV-09095-CRB, 2021 WL

26    2156467, at *3–4 (N.D. Cal. 2021).  It will do so again here.[2]

27

28    _____
[2] The negligent misrepresentation counterclaim here appears to be based on fraud.  See
Counterclaim ¶¶ 34–38 (alleging that Originate misrepresented its skills and expertise "to

United States District Court
Northern District of California

1    If a court grants a motion to dismiss for failure to state a claim, it should "freely

2 give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A court

3 nevertheless has discretion to deny leave to amend due to "undue delay, bad faith or

4 dilatory motive on the part of the movant, repeated failure to cure deficiencies by

5 amendments previously allowed, undue prejudice to the opposing party by virtue of

6 allowance of the amendment, [and] futility of amendment."  Leadsinger, Inc. v. BMG

7 Music Pub., 512 F.3d 522, 532 (9th Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182

8 (1962)).

9 **III.    DISCUSSION**

10    To state a claim for negligent misrepresentation in California, a plaintiff must

11 plausibly allege "(1) the misrepresentation of a past or existing material fact, (2) without

12 reasonable ground for believing it to be true, (3) with intent to induce another's reliance on

13 the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting

14 damage."  U.S. Cap. Partners, LLC v. AHMSA Int'l, Inc., No. 12-6520-JSC, 2013 WL

15 594285, at *3 (N.D. Cal. Feb. 14, 2013) (citing Apollo Cap. Fund LLC v. Roth Cap.

16 Partners, LLC, 158 Cal.App.4th 226, 243 (2007)) (internal quotation marks omitted). To

17 avoid dismissal, Fletcher must plead with particularity the time and place of the fraud, the

18 statements made and who made them, an explanation of why or how such statements were

19 false or misleading, and the role of each defendant in the alleged fraud.  See KEMA, Inc.

20 v. Koperwhats, No. C-09-1587 MMC, 2010 WL 3464737, at *3 (N.D. Cal. 2010).

21    The negligent misrepresentation counterclaim fails to state a claim for a number of

22 reasons.

23    **A.    Representations about Originate's skills and expertise**

24    The counterclaim alleges that "Originate misrepresented to [Fletcher] that it had the

25 skills and expertise to develop the Perfected Claims' application and get the application to

26

27    _____

28 induce [Fletcher] into agreeing to the Agreement and additional SOWs," that Fletcher
justifiably relied on those representations, and that Fletcher was "damaged because of its
reliance.")  Accordingly, Rule 9(b) applies.

United States District Court
Northern District of California

market quicker and with less cost.  These statements were made to induce [Fletcher] into agreeing to the Agreement and additional SOWs and spending substantial money, effort, and time."  Counterclaim ¶ 35.  Elsewhere Fletcher alleges that "The proposal also notes that Originate's primary areas of expertise include: (i) product and business strategy, involving guiding the strategy from conception to realization; (ii) user experience and design, involving a human-centered approach that leverages rapid prototyping to validate and refine concepts; and (iii) software development."  Id. ¶ 13.  But, aside from calling them "misrepresentations," the counterclaim does not actually allege that Originate lacked the skills and expertise it claimed to have, or that Originate did not have a reasonable basis for believing its assertions about its skills and expertise to be true.

Moreover, courts routinely hold that assertions about one's skill and expertise are not the kind of actionable representations upon which another party can reasonably rely. See, e.g., Cytokinetics, Inc. v. Pharm-Olam Int'l, Ltd., No. 14-05256 JSW, 2015 WL 1056324, at *5 (N.D. Cal. Mar. 20, 2015) (statements like defendant "focuses on delivering high quality data," and defendant creates "value for our clients by satisfying their clinical development needs with consistent and dependable solutions and services," and defendant's "data management team has experience developing and deploying EDC & CDMS study systems across several leading vendors" are not statements of fact and/or are "too general and non-specific to form the basis of a" fraud claim); County of Marin v. Deloitte Consulting LLP, 836 F. Supp. 2d 1030, 1038–39 (N.D. Cal. 2011) (statements like defendant is "uniquely qualified," has "deep experience," has "assembled a highly skilled and experienced" team, has great "strength" in integrating "all aspects of ERP implementations" are "highly subjective, generalized statements of the superiority of Deloitte's qualifications made in a sales context" and therefore "puffery" rather than "quantifiable, actionable misstatements that can form the basis of a . . . fraud claim.").  The Ninth Circuit has explained that "consumer reliance will be induced by specific rather than general assertions."  Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv., Inc., 911 F.2d 242 (9th Cir. 1990).  Originate's representations about its skills and experience,

as alleged, were not specific and therefore not actionable.

## B.    Representations about Time and Cost

The counterclaim further alleges that "in Originate's Proposal, Originate made representations, through its representative David Riker, regarding Originate's skills and expertise to develop the Perfected Claims' application, including the time and cost for Originate to develop and deliver a working beta version of the application."  Counterclaim ¶ 35; see also id. ("quicker and with less cost"), ¶ 22 (same).  The Court has already explained that the "skills and expertise" allegations are inadequate.  To the extent the counterclaim alleges that the Proposal made representations about the time and cost for Originate to develop the end product for Defendants—which is not how it presently reads—it is nonetheless flawed.  "Quicker," without a comparator, is simple puffery.  See, e.g., Perez v. Bath & Body Works, LLC, No. 21-cv-05606-BLF, 2022 WL 2756670, at *5 (N.D. Cal. July 14, 2022) ("Statements that characterize the speed of an action with terms like 'fast' are frequently held to be puffery.").

The negligent misrepresentation counterclaim contains no allegations about time and cost that are any more specific than what the Court has just discussed.  See Counterclaim ¶¶ 34–38.  Fletcher does elsewhere state that the Proposal included a 12–14 week timeline and $696,000 budget for development and delivery of the working beta version of the application.  Id. ¶ 22.  But it does not include those specifics as a basis for the negligent misrepresentation claim.  See id. ¶¶ 34–38 (instead twice referencing misrepresentations about skills and expertise).  And it would seem problematic to do so, as the Proposal was, as the counterclaim alleges, an "estimate[]," see id. ¶ 14, meaning that it was likely not a "misrepresentation of a past or existing material fact," and that Fletcher's reliance on it was likely not "justifiable," see U.S. Cap. Partners, LLC, 2013 WL 594285, at *3.  Moreover, the counterclaim acknowledges that the separately-negotiated SOWs were the documents intended to "define Originate's obligations and a time period for completing them."  Counterclaim ¶ 15.  Reliance on any representation made in the Proposal over the specific promises made in the SOWs is not obviously justifiable.

Fletcher asserts in its opposition brief that "Originate's representations in the Proposal regarding the timeline and costs for the first two of four project stages match what was set forth in [SOW] #1." Opp'n (dkt. 32) at 2. But the Court does not see that same allegation in the counterclaim. See Counterclaim ¶¶ 34–38; see also Opp'n at 3 (asserting that there was detailed information in the Proposal, "including daily and weekly breakdowns of the application's development."). Fletcher also asserts in the opposition brief that, based on the representations in the Proposal, Fletcher signed the Agreement with Originate and concurrently executed SOW # 1, which "was a mirror image of the deliverables and timeline covered by the . . . Proposal." Id. at 4. These allegations are also not in the counterclaim. See Counterclaim ¶¶ 34–38; but see id. ¶ 16 ("SOW #1 covered the Origin Sprint and Product Strategy phases detailed in the Proposal.").[3]

As currently alleged, the representations about time and cost do not support a negligent misrepresentation claim.

Because the representations in the counterclaim fail to state a claim for negligent misrepresentation, the Court GRANTS the motion to dismiss.

## C.     Leave to Amend

Fletcher requests leave to amend should the Court find the negligent misrepresentation claim wanting. See Opp'n at 10. The Court hesitates to grant leave, as Fletcher has not meaningfully grappled with Originate's argument that the economic loss rule prevents a negligent misrepresentation claim entirely here. See Mot. at 4 (quoting Robinson Helicopter Co. v. Dana Corp., 34 Cal.4th 979, 990 (2004) for the proposition that "If every negligent breach of a contract gives rise to tort damages the limitation would be meaningless, as would the statutory distinction between tort and contract remedies."); Reply (dkt. 33) at 7–8. However, the Court will permit Fletcher to amend the negligent

---

[3] Representations that are more specific and detailed than "quicker and at less cost" might not be puffery, and might more reasonably be relied on by another party. See Newcal Indus. v. Ikon Office Solution, 513 F.3d 1038, 1053 (9th Cir. 2008) ("a statement that is quantifiable, that makes a claim as to the 'specific or absolute characteristics of a product,' may be an actionable statement of fact while a general, subjective claim about a product is non-actionable puffery.").

United States District Court
Northern District of California

misrepresentation counterclaim, provided it can avoid the problems identified herein and allege conduct by Originate separate and apart from Originate's alleged contractual breaches.  See Food Safety Net Servs. v. Eco Safe Sys. USA, Inc., 209 Cal. App 4th 1118, 1132 (2012).

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS the motion to dismiss the negligent misrepresentation counterclaim, and gives Fletcher leave to amend (as to that counterclaim only) within thirty days of this order.

**IT   IS   SO   ORDERED.**

Dated: June 8, 2023

CHARLES R. BREYER
United States District Judge

United States District Court
Northern District of California

8